In re RAYMOND.

(District Court, E. D. Pennsylvania. September 10, 1901.)

CONVICTS—GOOD BEHAVIOR—COMMUTATION OF SENTENCE.

On the assumption that the Pennsylvania act of May 11, 1901, entitled "An act providing for the commutation of sentences, for good behavior of convicts in prisons, penitentiaries, workhouses and county jails of this State, and regulations governing the same," is by congressional legislation applicable to United States prisoners confined in the Eastern Penitentiary of that state at the time of its enactment, a United States prisoner so confined has no right to commutation for good conduct in the absence of a report on that subject by the board of prison officials to the governor and action thereon by the latter, with the approval of the designated state officers.

(Syllabus by the Court.)

John Kent Kane, Chancellor D. Holden, and Hampton L. Carson, for petitioners.

Joseph W. Thompson and Wm. M. Stewart, Asst. U. S. Attys., and James B. Holland, U. S. Atty., for respondents.

BRADFORD, District Judge. Charles W. Raymond has resorted to a writ of habeas corpus to secure his release from alleged unlawful detention in the eastern penitentiary of Pennsylvania, a state insti-

tution for the confinement of prisoners sentenced to imprisonment for crime. In December, 1895, he was convicted in this court of the offence of willfully misapplying the funds of a national banking association, and was sentenced December 23, 1895, as follows:

"And now, the 23d day of December, 1895, all and singular the premises being seen and by the Court here fully understood, it is considered and adjudged that the defendant, Charles W. Raymond, be imprisoned and confined in the Eastern Penitentiary, of the Commonwealth of Pennsylvania, for the term of seven years and five calendar months; that he pay the costs of prosecution and stand committed until judgment be fully complied with, and that he be subject in all respects to the same discipline and treatment as convicts sentenced by the courts of the said Commonwealth."

Pursuant to the sentence he was forthwith committed to the custody of the warden of the penitentiary, where he yet remains in confinement. The principal question sought to be raised in this case is whether the act of Pennsylvania of May 11, 1901, entitled "An act providing for the commutation of sentences for good behavior of convicts in prisons, penitentiaries, workhouses and county jails of this State, and regulations governing the same", has by congressional legislation been made applicable to United States prisoners confined in the eastern penitentiary at the time of its enactment. Section 1 provides that, subject to certain exceptions not material in this connection, a prisoner "may, if the Governor shall so direct, and with the approval of the Board of Inspectors or Managers earn for himself or herself a commutation or diminution of his or her sentence or sentences" according to the specified rate.

Section 3 is as follows:

"Section 3. On any day, not later than the twentieth day of each month, the Board of Inspectors or Managers, or the warden, superintendent or keeper of each of the State prisons, penitentiaries, workhouses or county jails of this State, shall forward to the Governor a report directed to him of any convict or convicts who may be discharged the following month by reason of the commutation of his or her sentence or sentences, which shall contain the following information, namely: The full name of the convict, together with any alias which he or she may be known to have, the name of the county where the conviction was had, a brief description of the crime of which the convict was convicted; the name of the court in which the conviction was had, the name of the presiding judge, the date of the sentence, the date of the reception in the prison or penitentiary, the term and fine, the amount of commutation recommended, and the date for discharge from the prison, penitentiary, workhouse or jail, if allowed."

Section 5 is as follows:

"Section 5. The Boards of Inspectors and Managers of the State prisons, penitentiaries, workhouses and county jails in this State shall meet once every month, before the date fixed for the transmission of their report to the Governor, as hereinbefore provided, and proceed to determine the amount of commutation which they shall recommend to be allowed to any convict, which shall not in any case exceed the amount fixed by this act. They shall have full discretion to recommend the withholding of the allowance of commutation for good conduct, or of a part thereof, as a punishment for offences against the discipline of the prison, penitentiary or county jail, or for any attempt to escape therefrom. In all cases, however, where the board shall recommend the withholding of the allowance of the whole or any part of the commutation for good conduct, they shall forward with their report to the Governor their reasons, in writing, for such disallowance and the Governor may, in his discretion, decrease or increase the amount of commuta-

tion as recommended by the said board, but he shall not increase the same beyond the amount fixed by this act: Provided, however, that the Governor shall not execute any of the rights or powers herein granted unto him until the Lieutenant Governor, Secretary of the Commonwealth, Attorney General and the Secretary of Internal Affairs, or any three of them, after full hearing, upon due public notice and in open session, according to such rules as they shall provide, shall have recommended the said commutations and diminutions of sentences."

It is admitted that the petitioner's conduct while in confinement has been excellent; that he "as prisoner has so demeaned himself that he is entitled to whatever reduction of sentence is legally given to federal prisoners for good behavior;" and that, should he now receive commutation according to the rate specified in section 2 he would thereupon be entitled to his liberty. It is claimed, however, first, that the Pennsylvania act does not apply to federal prisoners, and, secondly, that if applicable to such prisoners sentenced since the date of its passage, it does not apply to those sentenced and committed prior to its passage. If it be assumed that by virtue of federal legislation the system of commutation as a whole provided for by the act is applicable to federal prisoners sentenced and committed to the eastern penitentiary prior to its passage and there remaining confined at that time pursuant to their sentences, it by no means follows that on account of uniform good behavior on their part during their confinement they will become entitled to commutation at the specified rate, or, indeed, to any commutation. Good behavior alone does not cause the act to execute itself so far as commutation is concerned. Certain proceedings required by the act are conditions precedent to the granting of commutation. First, the board of inspectors or managers of the penitentiary shall meet "and proceed to determine the amount of commutation which they shall recommend to be allowed to any convict, which shall not in any case exceed the amount fixed by this act," with "full discretion to recommend the withholding of the allowance of commutation for good conduct, or of a part thereof, as a punishment for offences against the discipline of the prison, penitentiary or county jail, or for any attempt to escape therefrom." Next, they shall within the specified time "forward to the Governor a report directed to him of any convict or convicts who may be discharged the following month by reason of the commutation of his or her sentence or sentences", containing certain information, including, among other things, the full name of the convict, "together with any alias which he or she may be known to have", the "name of the court in which the conviction was had", the "name of the presiding judge", and the "amount of commutation recommended"; and in all cases in which the board "shall recommend the withholding of the allowance of the whole or any part of the commutation for good conduct, they shall forward with their report to the Governor their reasons in writing for such disallowance." After the receipt of the report the governor with the approval of "the Lieutenant Governor, Secretary of the Commonwealth, Attorney General and the Secretary of Internal Affairs, or any three of them, after full hearing, upon due public notice and in open session, according to such rules as they shall prescribe," may "in his discre-

tion, decrease or increase the amount of commutation as recommended by the said board, but he shall not increase the same beyond the amount fixed by this act." It is admitted that the petitioner is not unlawfully restrained of his liberty unless he is entitled to commutation provided for in the act. But under the provisions of the act commutation can only be made by the governor with the approval of the designated state officers, and after a report by the board of prison officials of the penitentiary recommending the allowance or disallowance in whole or in part of the amount of commutation fixed by the act. In the case of the petitioner it was stated and admitted by counsel at the hearing, and appears from the petition for a writ of mandamus hereinafter referred to, that no report has been made by the board of prison officials, nor has his claim for commutation been officially brought to the attention of the governor. It cannot be assumed that the proceedings required by the act are merely formal. On the contrary it is evident that they are necessary to a just, intelligent and discriminating allowance of the commutation provided for. If it be assumed that the board, in omitting to report in the petitioner's case on the subject of commutation, violated the law, such a report and action thereon by the governor were nevertheless conditions precedent to the petitioner's right to a discharge. It is contended, however, on the part of the petitioner that the Pennsylvania act, in the case of a federal prisoner whose conduct during confinement is ascertained to have been uniformly good, "executes itself" in his favor, and entitles him to the maximum commutation prescribed, without any report by the board of prison officials to the governor and action thereon by the latter, and that such good conduct having been admitted in this case the petitioner is now legally entitled to a discharge. It is difficult to perceive on what ground this claim can be sustained. Certainly the act does not in any of its provisions discriminate or suggest any discrimination between state and federal convicts in the matter of commutation or of the terms or conditions on which it is to be obtained. It is a state statute providing a system of commutation or rule of credits for the penitentiaries and other prisons of Pennsylvania, and intended to apply to all prisoners legally confined therein, other than those excepted by its provisions, whether convicted in the courts of the United States or in the courts of that state. The idea that the legislature intended that, while prisoners convicted in the courts of Pennsylvania should for good conduct receive full or partial commutation only on the terms and conditions prescribed, federal convicts confined in her prisons should for good conduct have a right to full commutation according to the rate mentioned in section 2 without respect to any of the required conditions, is wholly inadmissible. In the enactment of the statute in question Pennsylvania was legislating for herself and not for the United States. But it is urged that by virtue of federal legislation the rate or rule of credits mentioned in section 2 has been adopted as the absolute and fixed measure of commutation to which federal convicts are entitled for good conduct, and that such maximum commutation must be accorded to such convicts wholly without regard to the terms and conditions required by the act for the granting of any

commutation. On the supposition that federal legislation touching commutation has application to the act of May 11, 1901, this position nevertheless is, in my opinion, unsound. Sections 5539, 5543 and 5544 Rev. St. U. S. are as follows:

"Sec. 5539. Whenever any criminal, convicted of any offense against the United States, is imprisoned in the jail or penitentiary of any State or Territory, such criminal shall in all respects be subject to the same discipline and treatment as convicts sentenced by the courts of the State or Territory in which such jail or penitentiary is situated; and while so confined therein shall be exclusively under the control of the officers having charge of the same, under the laws of such State or Territory.

"Sec. 5543. All prisoners who have been, or may be, convicted of any offense against the laws of the United States, and confined in any State jail or penitentiary in execution of the judgment upon such conviction, who so conduct themselves that no charge for misconduct is sustained against them, shall have a deduction of one month in each year made from the term of their sentence, and shall be entitled to their discharge so much the sooner, upon the certificate of the warden or keeper of such jail or penitentiary, with the approval of the Attorney-General.

"Sec. 5544. The preceding section, however, shall apply to such prisoners only as are confined in jails or penitentiaries where no credits for good behavior are allowed; but, in other cases, all prisoners now or hereafter confined in the jails or penitentiaries of any State for offenses against the United States, shall be entitled to the same rule of credits for good behavior applicable to other prisoners in the same jail or penitentiary."

Section 1 of the act of March 3, 1875, entitled "An act to provide for deductions from the terms of sentence of United States prisoners" (1 Supp. Rev. St. U. S. p. 89), provides in part as follows:

"That all prisoners who have been, or shall hereafter be, convicted of any offense against the laws of the United States, and confined, in execution of the judgment or sentence upon such conviction, in any prison or penitentiary of any State or Territory which has no system of commutation for its own prisoners, shall have a deduction from their several terms of sentence of five days in each and every calendar month during which no charge of misconduct shall have been sustained against each severally, who shall be discharged at the expiration of his term of sentence less the time so deducted, and a certificate of the warden or keeper of such prison or penitentiary of such deduction shall be entered on the warrant of commitment."

From this legislation it clearly appears that United States prisoners confined in state penitentiaries or prisons, where there is a "rule of credits" or "system of commutation", are entitled only to an equality of right with state convicts confined therein with respect to commutation. They "shall in all respects be subject to the same discipline and treatment as convicts sentenced by the courts of the State or Territory in which such jail or penitentiary is situated." They "shall be entitled to the same rule of credits for good behavior applicable to other prisoners in the same jail or penitentiary." They shall be subject to the same "system of commutation" applicable to state convicts confined therein. If a "rule of credits" or a "system of commutation" includes or necessarily involves the performance of certain conditions precedent to the allowance of the "credits" or "commutation", it is none the less a "rule of credits" or a "system of commutation"; and if congress has adopted such rule or system for United States prisoners, the latter are only entitled to the benefit of such rule or system coupled with such conditions. There is not the slightest evidence that congress intended or has attempted, in

the case of United States convicts confined in the prisons or penitentiaries of a state having a rule of credits or system of commutation, to sever the rate of commutation from the conditions prescribed by the state for its allowance, adopting the former and rejecting the latter; thereby introducing inequality and confusion in the administration of the affairs of a state institution in opposition to the general intent of the state legislation in the premises. The case made by the petitioner lacks the essential element of favorable action by the Pennsylvania authorities with respect to commutation. Without such favorable action he cannot be held to be unlawfully restrained of his liberty, and consequently cannot, as the matter now stands, secure his release on the writ of habeas corpus. He applied for a writ of mandamus in aid of the proceedings on the writ of habeas corpus, setting forth in his petition that the prison officials of the eastern penitentiary, in accordance with section 5, had "determined that the conduct of your petitioner entitles him to be recommended for the full amount of commutation provided by said act"; and that, although often requested so to do, they "refused and still do refuse to make any report to the governor of the State of Pennsylvania with respect to your petitioner as required by the said section 3 of the said act of the State of Pennsylvania," and praying as follows:

"Your petitioner therefore prays your Honorable Court to grant a mandamus upon the said Daniel W. Bussinger, Warden aforesaid, and the said Conrad B. Day, George Vaux, Jr., Alexander Balfour, William G. Huey, and James H. Gay, Inspectors aforesaid, directing and requiring them to report on your petitioner to the Governor of the State of Pennsylvania, as required by the said act of assembly of Pennsylvania or show cause why they do not to this court, and he will ever pray, etc."

Since the hearing the petitioner has abandoned his application for the writ of mandamus as not "necessary for the exercise" of jurisdiction by this court over the proceedings on the writ of habeas corpus in the sense in which those terms are employed in section 716 Rev. St. U. S. The petitioner, having failed to make a case for discharge on the writ of habeas corpus, must be remanded to custody. In view of the conclusion reached it is unnecessary, as it would be improper, to express any opinion on the question whether by virtue of federal legislation the system of commutation provided by the Pennsylvania statute is applicable to and operative in the case of a United States prisoner sentenced and committed to the eastern penitentiary prior to its enactment.