**Joseph Carl BROWN, Jr.**

**v.**

**Ira WILSON.**

**Civ. A. No. 72–755.**

United States District Court,
W. D. Pennsylvania.

March 26, 1974.

See also D.C., 363 F.Supp. 707.

No appearance for plaintiff.

Stephen M. Sokol, Pittsburgh, Pa., for defendant.

## MEMORANDUM AND ORDER

SNYDER, District Judge.

The Plaintiff, Joseph Carl Brown, Jr., brought this action against Ira Wilson for his alleged failure to present a letter written on his behalf before the Board of Pardons. Plaintiff claims his action arises under 42 U.S.C. § 1983 (the Civil Rights Act) and bases jurisdiction on 28 U.S.C. § 1343. The Defendant Wilson is a Counselor at the State Correctional Institution at Pittsburgh. The purpose of the Counselors at the State Correctional Institution at Pittsburgh is to (1) aid the prisoners to adjust to living in the prison population, (2) find what the particular aptitudes and abilities are of specific prisoners, and (3) to use their findings to help the prisoners to eventual rehabilitation through release by either pardon, parole or any other available program. The Plaintiff had applied for a commutation of his sentence; the Pennsylvania Board of Pardons was to meet on July 29, 1972 for the purpose of reviewing such applications. Since Plaintiff Brown did not have sufficient funds to obtain an attorney to represent him, Mr. Wilson would present his (Brown's) case for commutation before the Board of Pardons.

Sometime in June of 1972, the Plaintiff and the Defendant met and discussed Brown's application for commutation. In the best interest of the prisoner, he was advised he should procure as many letters of recommendation as possible to present before the Board. Plaintiff here was able to procure only one letter (other than letters from his immediate family) and that letter was from a former school teacher, Mrs. Bette Cavanah. The letter of Mrs. Cavanah was received at least a few days prior to the meeting of the Board of Pardons on June 29, 1972. In his Affidavit supporting the initial Motion for Summary Judgment, the Defendant stated:

"2. I have been employed at the State Correctional Institution at Pittsburgh as a Counselor since 1965. In January of 1972, I was appointed Representative for the Western District to the Board of Pardons. I have recently been named Resident Placement Co-Ordinator at the Institution.

3. On June 29, 1972, as Representative for the Western District to the Board of Pardons, I presented to the Board of Pardons, at their meeting, letters of recommendation on behalf of many prisoners incarcerated at the State Correctional at Pittsburgh. One of these prisoners was Joseph Carl Brown, Jr. Shortly before the meeting of the Board occurred, I received a letter from Mrs. Bette Cavanah on behalf of Joseph Carl Brown, Jr. However, I was unable to present this letter to the Board because there was insufficient time to incorporate this letter into Joseph Carl Brown's file because there were a great many files to prepare for presentation to the Board."

In an "Opposing Memorandum of Fact and Law" filed December 14, 1972, the Plaintiff pro se alleged:

"The term 'SHORTLY BEFORE' is grossly misleading. It appears that the defendant would have the Court believe that the letter was received as he was going out of the prison front gate en route to the City County Building on the Morning [Sic] of June 29, 1972, where the hearing was conducted. However, it just so happens that the letter of Mrs. Bette Cavanah was postmarked June (20) (twentieth), 1972; and there[fore] most certainly arrived at the institution within a maximum of three (3) days."

A Preliminary Hearing scheduled for August 7, 1973, was postponed by the request of Plaintiff and held on August 16, 1973. At that time the Plaintiff brought a Motion to Disqualify the Trial Judge. This Motion was subsequently denied and another hearing was scheduled on December 20, 1973.

In the interim, the Defendant filed an Affidavit of William B. Robinson, which stated the following:

"I, William B. Robinson, Senior Member of the Pennsylvania Board of Pardons, do swear that the following facts are true and correct to the best of my knowledge, information and belief.

On June 29, 1972, the case of Joseph Carl Brown, Jr., applicant for commutation of minimum sentence, was heard in the Supreme Court Room, in the City-County Building, County of Allegheny, Pittsburgh, Pennsylvania.

The case was presented by Ira Wilson, Jr. Mr. Wilson's plead for the above named applicant was very thorough and complete. At the conclusion of his oral presentation, Mr. Wilson submitted to the Board a letter dated June 20, 1972, from one Mrs. W. D. Cabanah. This letter was incorporated in the file of Joseph Carl Brown, Jr.

At the conclusion of the day's hearings the Board met in an executive session on July 21, 1972, in the Office of the Attorney General, in the State of Pennsylvania. At that time, the case of Joseph Carl Brown, Jr., was reviewed (note: The letter of Mrs. Cabanah was incorporated in the file and was considered to be part of the final disposition of the Board). It was the decision of the Board at this time to refuse commutation of minimum sentence based on numerous other factors."

At the Hearing on Defendant's Motion for Summary Judgment held on December 20, 1973, the Court pointed out a conflict between the two affidavits as presented. The Affidavit of Mr. Wilson stated that he did not have time to incorporate the letter prior to the hearing of the Board of Pardons on June 29, 1972, while the Affidavit of Mr. Robinson stated that at the conclusion of his oral presentation of June 29, 1972, on behalf of Mr. Brown, Mr. Wilson incorporated into the file the letter of Mrs. Cavanah. The Court, at the request of Brown, granted both parties forty (40) days to file briefs dealing with constitutional questions concerning inmates' rights before the Board of Pardons.

The Defendant's argument in support of the Motion for Summary Judgment is that the actions of the Defendant Wilson as alleged in the Complaint did not involve the deprivation of any right or privilege secured by the Federal Constitution or Laws. This reasoning starts with the premise that since there is no federal right to pardon, Plaintiff could not be heard to complain in a civil rights action that his letter was not presented to the Board. The Defendant then notes that actions arising under 42 U.S.C. § 1983 must be based on the deprivation of a right or privilege secured by the Constitution and/or Laws of the United States. From this, the Defendant concludes that pardon has never been held to constitute a right or privilege of the citizenship of a criminal, but rather has been recognized as purely an element of legislative and judicial grace, relying on Ex parte United States, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916) and Murray v. State of Louisiana, 347 F.2d 825 (5th Cir. 1965) (See also: United States ex rel. Forino v. Garfinkel, 166 F.2d 887 (3rd Cir. 1948); Singleton v. Shafer, 313 F.Supp. 1094 (E. D.Pa.1970); and In re Raymond, 110 F. 155 (E.D.Pa.1901)), therefore, no federal right was violated.

The Defendant analogizes the situation presently before us to that in Lambur v. Chew, 356 F.Supp. 751 (E.D.Va. 1973). In *Lambur* the Plaintiff had been picked up as a parole violator on September 9, 1972. No hearing was held at the time of apprehension as required by Virginia law to determine whether or not he had violated his parole. On January 9, 1973, a probable cause interview was held and it was then determined that Lambur had indeed violated the terms of his parole. Lambur argued that the failure to give him the required hearing in September resulted in a violation of his rights from September until January. The Court held that since a hearing at the time of his apprehension would have shown that he was a parole violator, therefore, he should have been bound over. The Court then stated:

"The Commonwealth of Virginia, if it so desires, may choose to use the preliminary interview procedure for the further purpose of making an initial determination as to whether the violations found ' justify revocation. This seems to have been done in the hearing given Lambur on January 9, 1973, by Campbell's recommendations. But if Virginia does choose to use the procedure in this way and then fails to accord it to a particular parolee, whatever misfortune that may result to that parolee does not result from the violation of a federal constitutional right. Thus, it may be that had Lambur been given the sort of preliminary hearing on September 9, 1972, that he was given on January 9, 1973, the Parole Board at the hearing in October would have decided not to revoke his parole. If this is true, then the failure to give him a preliminary hearing contributed to his incarceration from October until January. But it was not the violation of the due process requirement recognized by *Morrissey* [Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484] that resulted in that additional period. It was, instead, the failure to make a preliminary recommendation as to the merits of his revocation that contributed to the period of incarceration. This failure does not constitute a violation of federal rights."

Plaintiff contends that the right to be protected was his right to have the letter presented before the Pardons Board. He relies principally on the Civil Rights Act that such a federal right exists.

After reviewing all the pleadings and the principles of law applicable, we concur with the Plaintiff that such a right exists which is federally protected; however, we conclude that the Defendant's Motion for Summary Judgment must be granted since the Plaintiff has failed to allege or offer proof that this right, as this Court quite liberally construes it, was actually violated. In Pennsylvania, as in most states, the Board of Probation and Parole and the

Board of Pardons along with the Executive Branch, are vested with exclusive jurisdiction to grant respectively either a pardon or a parole. Singleton v. Shafer, *supra*; Robinson v. Largent, 311 F. Supp. 1032 (E.D.Pa.1970); Commonwealth ex rel. Hendrickson v. Pennsylvania State Board of Parole, 409 Pa. 204, 185 A.2d 581 (1962); and Commonwealth ex rel. Soudani v. Maroney, 200 Pa.Super. 254, 188 A.2d 789 (1963). Although the Defendant did not advance the legal proposition, the Court is aware that there is a limited judicial immunity for parole officers who are following their discretionary duties to aid the Parole Board to their attorney that, in ess. Myers v. Bendus, 343 F.Supp. 370 (E.D.Pa.1972); Robinson v. Largent, 311 F.Supp. 1032 (E.D.Pa.1970). We believe that here, however, such principles are inapplicable since the Defendant had more than a discretionary duty to present the letter, but was required to do so by the very position of his employment.

To allege a proper claim under 42 U.S.C. § 1983 and its jurisdictional counterpart 28 U.S.C. § 1343, it is necessary to show that the deprivation committed was done by a person acting *under color* of State Law. Courts have recognized that Congress in enacting § 1983 meant to give a remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position or discretionary powers. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Williams v. United States, 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774 (1951); Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); United States v. Classic, 313 U.S. 299, 61 S. Ct. 1031, 85 L.Ed. 1368 (1941). In Palermo v. Rockefeller, 323 F.Supp. 478 (S.D.N.Y.1971), the Court held that Members of the Parole Board may be sued under this section for deprivations of constitutional rights. In *Palermo*, the Court stated:

"Members of the Parole Board act under color of state law and thus may be sued under § 1983 for deprivations

of constitutional rights. Although we recognize that in the usual case their decisions require a special competence quite unlike that appropriate in an adversary setting. Menechino v. Oswald, 430 F.2d 403 (2d Cir. 1970), and their discretionary judgment should not be lightly overturned by a court, parole boards are not immune from suit, United States ex rel. Campbell v. Pate, 401 F.2d 55 (7th Cir. 1968), and when a clear-out deprivation of constitutional rights is alleged, we must assume jurisdiction and, if the claim is proved, not hesitate to act. When a parole board abandons its statutory duty to make its decision on the basis of an independent judgment as to whether release of the prisoner will be in the best interests of the individual and of society, N.Y. Correction Law, McKinney's Consol.Laws, c. 43, §§ 210, 213, in order to further some other goal, as is alleged here, it no longer acts within the prescribed scope of its duties or according to the procedures which it is by law required to follow, and it cannot expect the same measure of deference from the courts.

In this case, taking plaintiffs allegations as true, we find that they have stated a claim upon which, assuming it were proved, relief could be granted under § 1983 against the Parole Board. They allege that, prior to entering into an agreement pursuant to which they entered guilty pleas and gave up their right to a jury trial, direct promises were made by the Parole Board to their attorney that, in exchange for plaintiffs' pleas and for the return of stolen property, they would be released on parole after serving 18 months of their sentences. Following this alleged agreement, the Parole Board refused to grant plaintiff release on parole at the promised time. Proof of such facts would establish a violation of plaintiffs' Due Process rights. While a plea of guilty, if voluntarily and knowingly made, may not be challenged on grounds which related to the motivation for the plea, North Carolina v.

Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) (desire to avoid a possible death penalty); McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (unavailability of constitutional procedures for testing the admissibility of defendant's pretrial statements), it is a fundamental prerequisite of the plea negotiation process that the representations made to the defendant be accurate, and that promises made to him be kept, United States ex rel. Elksnis v. Gilligan, 256 F.Supp. 244 (S.D.N.Y.1966). The present case is not one in which a defendant who has had the benefit of a plea agreement later seeks to withdraw his guilty plea, cf. Shelton v. United States, 246 F.2d 571 (5th Cir. 1957), but one in which it is alleged that the defendant has kept his part of the agreement and the state has not, cf. United States ex rel. McGrath v. LaVallee, 319 F.2d 308 (2d Cir. 1963), 348 F.2d 373 (2d Cir. 1965); United States ex rel. Elksnis v. Gilligan, *supra*. In this respect, Parole Board members, whose decisions can have such a significant impact on the length of time an individual spends in actual custody, are subject to the same standards of fair play that apply to judges when they participate in plea negotiations. In what we assume to be the rare situation in which they promise release on a certain date, as is alleged here, they cannot breach such a promise with impunity, cf. United States ex rel. Elksnis v. Gilligan, *supra*." (Emphasis supplied).

Our present situation could be comparable to *Palermo* if the Defendant had violated the standards of fair play as stated in the Palermo case. If Defendant Wilson intentionally refused to place the letter before the Pardons Board or refused to incorporate it into the Brown file, then perhaps a Civil Rights deprivation could have occurred. This is not the case; the Plaintiff never alleges such and moreover, the Defendant explains why such letter was not presented on June 29, 1972. He states via the Affidavit that he did not have time to incorporate said letter. Whether such is the case or whether it was a case of neglect, the Defendant fulfilled his responsibility to the Plaintiff by incorporating the letter prior to the final determination by the Executive Board on July 21, 1972. At that time the letter was part of the Plaintiff's file and the Board still refused his application for commutation. This the Plaintiff does not refute.

We, therefore, conclude that the Defendant's Motion for Summary Judgment must be granted since the Plaintiff's Complaint fails to state a cause of action for which any relief is required. We believe that as a matter of law the Defendant's conduct did not amount to a deprivation of any civil right that the Plaintiff might have under the Civil Rights Act or the Constitution and Laws of the United States.

An appropriate Order will be entered granting Summary Judgment for the Defendant.