588 F.2d 740
 Bradley H. JOHNSON, Individually and on behalf of all others
similarly situated presently incarcerated in adult
facilities of the County of San Diego,
Plaintiffs-Appellants,
v.
John F. DUFFY, Sheriff for the County of San Diego, Frank
Woodson, Director of Adult Institutions of the San Diego
County Probation Department, Le Roy Athey, Executive
Superintendent of Adult Institutions of the San Diego County
Probation Department, Does I-V, Members of the San Diego
County Classification Committee, all parties named as in
their official capacities as agents and employees of the
County of San Diego, State of California, Defendants-Appellees.
 No. 76-1562.
 United States Court of Appeals,
Ninth Circuit.
 Dec. 27, 1978.
 
 Rodney R. Jones, San Diego, Cal., for plaintiffs-appellants.
 William D. Smith, Deputy Co-counsel, San Diego, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of California.
 Before HUFSTEDLER and TANG, Circuit Judges, and TAKASUGI,* District Judge.
 HUFSTEDLER, Circuit Judge:
 
 
 1
 Johnson brought this civil rights action (42 U.S.C. § 1983) challenging the constitutional validity of the forfeiture of his accumulated earnings from work performed at an honor camp on the ground, among others, that the actions of the defendants deprived him of his property without due process of law. He initiated the suit as a class action, seeking both damages and declaratory relief, on behalf of himself and a class consisting of "all adult males or females who are presently incarcerated in any adult institution of the County of San Diego" who have suffered forfeitures of their prison earnings. The district court denied certification of the class, without prejudice to a later renewal of the motion, and it granted the defendants' motion for summary judgment on the ground that the named defendants had not personally participated in the forfeiture of Johnson's earnings and, in respect of defendant Athey, his refusal to return the forfeited sums to Johnson was pursuant to a reasonable and good faith belief that the forfeiture was valid. We uphold the district court's certification ruling, but we reverse the judgment because Johnson made a Prima facie showing of potential section 1983 liability based upon the defendants' omission to perform duties imposed by state law that deprived Johnson of his property without due process.
 
 
 2
 Pursuant to an order of probation issued by the Superior Court of San Diego County, Johnson was committed on July 13, 1973, to the custody of the sheriff for a period of one year. The County Classification Committee assigned him to Camp West Fork, a San Diego County honor camp under the jurisdiction of the San Diego County Probation Department. Under California's statutory scheme, regulating county jails, industrial farms, and camps, prisoners are assigned various work tasks for which they are paid small sums, not in excess of $2.00 per day for eight hours of work. The tasks include fire fighting, farming, and the manufacture of certain products. (Cal.Pen.Code §§ 4125-4131.) As the prisoner works, his honor camp account is credited with money earned from his work assignments. The prisoner can draw upon his account for commissary purchases, for paying debts to third persons, and for the support of his dependents. The net balance in his account is paid to him upon his discharge. (Cal.Pen.Code § 4126.)
 
 
 3
 By January 2, 1974, Johnson had earned "camp wages" of $81.35 and "fire fight wages" of $96.48, which sums were credited to his camp account. When Johnson was 40 minutes late for the mandatory breakfast count, in violation of a camp disciplinary rule, a camp officer filed a report with the Adjustments Committee. In the space on the report denominated "Recommendation by the Adjustments Committee," there was written "Reclass to jail, held in abeyance until he is either late again for work call or a mandatory count." On January 11, 1974, on a similar form, the camp reporting officer reported that Johnson was seven minutes late for a mandatory meal count. In the space provided for the Adjustments Committee's recommendation, there is an entry "Reclass to jail," signed by a person who is designated as Adjustments Committee Chairman. On the same form, there is an entry "Approved," signed by a person named Wiley, who designated himself as acting for the camp superintendent. Without any notice or hearing of any kind, Johnson was forthwith transferred to jail and his accumulated earnings forfeited.
 
 
 4
 * Section 4131 of the California Penal Code provides that honor camp earnings credited to a prisoner "shall be forfeited by him" when (1) the superintendent of an honor camp reports to the Classification Committee "that the prisoner refuses to abide by the rules of the . . . camp or refuses to work thereon," (2) the Committee makes an order transferring the prisoner to the county jail or the city jail for the unexpired term of his sentence, and (3) the sums in the prisoner's account have not been ordered paid to some person dependent upon the prisoner.[1]
 
 
 5
 Defendant Duffy, the San Diego County Sheriff, was responsible for the administration of the county jail facilities. Under section 4114 of the California Penal Code, the sheriff was also required to appoint members of the County Classification Committee, and the Committee was required to meet at least once weekly for the purpose of assigning prisoners to the various adult detention facilities operated by the county and for transferring prisoners between and among such facilities.
 
 
 6
 The defendants admitted by way of interrogatories that the Classification Committee did not meet or act upon Johnson's transfer, which triggered the forfeiture of his earnings. The defendants refused to respond to Johnson's interrogatories seeking to ascertain the identity and tenure of the members of the Classification Committee. The district court denied Johnson's motion to compel answers to those interrogatories.
 
 
 7
 In support of the defendants' motion for summary judgment, affidavits of Duffy and Athey were filed in which each of them denied that he had personally participated in the decision to reclassify Johnson, and Athey averred that he had a reasonable and good faith belief that Penal Code § 4131 was constitutional, when he refused to return Johnson's forfeited earnings.
 
 
 8
 The basis for both the district court's rulings on discovery matters and for granting summary judgment was the district court's acceptance of defendants' argument that no liability could attach under section 1983 unless a plaintiff was able to show that the named defendants "personally participated" in the alleged violation of civil rights. Thus, defendants argued successfully below that responses to Johnson's interrogatories were irrelevant because the named defendants admitted that the Classification Committee never met. The theory is that no one acted, and, therefore, no one could be liable for the inaction that nevertheless resulted in forfeiture of Johnson's earnings. Alternatively, the named defendants argued that none of them did anything affirmative, aside from Athey's refusal to return the earnings to Johnson upon his demand, and, therefore, their non-participation relieved them of any potential liability under section 1983.
 
 
 9
 Section 1983 provides, in pertinent part, that "(e)very person who, under color of any statute of any state . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." (42 U.S.C. § 1983.) A person "subjects" another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made. (Sims v. Adams (5th Cir. 1976) 537 F.2d 829.) Moreover, personal participation is not the only predicate for section 1983 liability. Anyone who "causes" any citizen to be subjected to a constitutional deprivation is also liable. The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury. (Cf. Beverly v. Morris (5th Cir. 1972)470 F.2d 1356.) If state law imposes liability upon a public official for the acts of his subordinates, vicarious liability can also be imposed upon him under section 1983. (Hesselgesser v. Reilly (9th Cir. 1971) 440 F.2d 901.)
 
 
 10
 Johnson did not advance any theory of vicarious liability for the acts of these defendants because applicable California law excludes such liability. (Cal.Gov't.Code § 820.8; Milton v. Nelson (9th Cir. 1976) 527 F.2d 1158.)
 
 
 11
 However, California law expressly imposes liability on a public employee for his own act or omission. (Cal.Gov't.Code § 820 (a public employee is "liable for injury caused by his act or omission to the same extent as a private person," except as otherwise provided by statute).) In the same statute that relieves a public employee of liability for an injury caused by the act or omission of another person, the Legislature declared: "Nothing in this section exonerates a public employee from liability for injury proximately caused by his own negligent or wrongful act or omission." (Cal.Gov't.Code § 820.8.)
 
 
 12
 Under the California statutes, together with the regulations promulgated pursuant thereto, Duffy was not only required to appoint the Classification Committee, he was also Chairman of the Committee charged with the responsibility of ordering Johnson's transfer from honor camp to the county jail. Duffy himself did not sign a transfer order on behalf of the Committee, and it is agreed that the Committee never met. Nothing in the record even suggests that Duffy could or did lawfully delegate his duty or the duty of the Classification Committee as a whole to act upon Johnson's transfer.[2] Duffy's omission to act, in violation of the duties imposed upon him by statute and by regulations, thus may subject him to liability under section 1983. The extent to which Athey either had or is assumed to have responsibility for the transfer decision cannot be determined from the record because all of Johnson's efforts by the use of discovery to ascertain the causal connection between Athey's acts or omissions and Johnson's injury were thwarted by refusals to respond to interrogatories that were properly presented. On remand, both Duffy and Athey will be compelled to respond to the interrogatories that they have heretofore refused to answer in connection with all aspects of the litigation other than the class action averments.
 
 II
 
 13
 Defendants argue that, even if the court erred in ruling on the " personal participation" issue, the judgment should nevertheless be affirmed because the prisoner did not have any due process rights to prevent arbitrary taking of his property until the Supreme Court decided Wolff v. McDonnell (1974) 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935, and Wolff is not retroactive. (Wolff v. McDonnell, supra, 418 U.S. at 573, 94 S.Ct. 2963; Cox v. Cook (1975) 420 U.S. 734, 95 S.Ct. 1237, 43 L.Ed.2d 587.) We reject the contention for two reasons. First, as we read section 4131 of the California Penal Code, California contemplated that at least some rudimentary due process was to be observed in transferring prisoners and causing forfeiture of their earnings, none of which was given to Johnson. Second, the law of this Circuit, antedating Wolff, and in effect when Johnson was subjected to forfeiture of his earnings, required at least minimal due process standards to be observed in ordering forfeiture of prison earnings. (Clutchette v. Procunier (9th Cir. 1974) 497 F.2d 809 ("Clutchette I "), Affirming Clutchette v. Procunier (N.D.Cal.1971) 328 F.Supp. 767. See also Allen v. Nelson (9th Cir. 1973) 484 F.2d 960, adopting the district court's opinion, reported in 354 F.Supp. 505.)[3]
 
 
 14
 We have no occasion to reach the question whether the primitive due process envisioned by California Penal Code § 4131 would pass constitutional due process muster, because it is evident from this record that the defendants did not comply with the statute and that Johnson was not accorded any due process at all.[4]
 
 III
 
 15
 Athey contends that the summary judgment should be upheld as to him, in any event, because his affidavit established his good faith defense. The good faith defense is an aspect of qualified immunity from section 1983 liability that public officials enjoy if they are acting in compliance with a valid statute. (Procunier v. Navarette (1977) 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24; Wood v. Strickland (1975) 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214; Scheuer v. Rhodes (1974) 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90.) Athey swore that he acted in good faith in reasonable reliance upon the constitutionality of California Penal Code § 4131. The defense does not avail him because, so far as appears from the present record, the statute was not followed. The official cannot rely upon an immunity defense if he "knew or reasonably should have known that the action he took within the sphere of his official responsibility would violate the rights of the (person) affected." He was chargeable with knowledge that a forfeiture of prison earnings without compliance with the provisions of section 4131 of the Penal Code was illegal, and he is also chargeable with knowledge that interests in the nature of entitlements were given due process protection. (E. g., Clutchette v. Procunier, supra, 328 F.Supp. 767.) Moreover, courts should be hesitant in granting summary judgments based upon a good faith defense to a section 1983 action when the record is as poorly developed as this one, particularly when a major factor in the poor development of the record is refusal of the officials sued to respond to appropriate discovery.
 
 IV
 
 16
 In his class action averments, Johnson sought to represent a class consisting of "all adult males or females who are presently incarcerated in any adult institution of the County of San Diego" who had suffered or who might suffer unconstitutional forfeitures of their prison earnings. The district court denied certification of the class without prejudice to the renewal of the motion at a later time. The motion was not renewed. The district court correctly denied certification because Johnson was not incarcerated at the time the action was filed, as were the persons whom he sought to represent, and his averments did not show that he was a member of the class he sought to represent at any pertinent time during the course of the proceedings. "A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court." (Sosna v. Iowa (1975) 419 U.S. 393, 403, 95 S.Ct. 553, 559, 42 L.Ed.2d 532.) Johnson might have been able to amend to name a class within which he could appropriately be a member if he had timely sought to do so. He did not do so, and it is too late now.
 
 
 17
 Johnson made numerous other constitutional attacks upon the statutes and proceedings that led to deprivation of his honor camp earnings. The district court did not reach the merits of these contentions, and neither do we.
 
 
 18
 Reversed and remanded for further proceedings consistent with the views herein expressed.
 
 
 
 *
 Honorable Robert M. Takasugi, United States District Judge, Central District of California, sitting by designation
 
 
 [1]
 " § 4131. Discipline; forfeiture of credits; reassignment by classification committee
 "Subject to regulations adopted by the board of supervisors the superintendent shall maintain discipline on an industrial farm. Whenever the superintendent reports to the county classification committee which assigned any prisoner to an industrial farm or camp that the prisoner refuses to abide by the rules of the farm or camp or refuses to work thereon, the committee may make an order transferring the prisoner to the county jail or city jail for the unexpired term of his sentence, and all sums credited to the prisoner shall be forfeited by him unless they have been ordered paid to some person dependent upon him. Thereafter the committee may reassign the person to the industrial farm or industrial road camp upon recommendation of the superintendent of the farm or camp."
 
 
 [2]
 The constitutional validity of the transfer itself is not in issue in this case. The transfer is relevant only because transfer is a statutory condition precedent to forfeiture of prison earnings. We do not reach the issue presented in Meachum v. Fano (1976) 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 for two reasons. First, applicability of due process requirements to prison transfers is not in issue, and second, the California transfer statute, unlike the statute considered in Meachum, does "condition the authority to transfer on the occurrence of specific acts of misconduct or other events . . . ." (Id. at 223, 96 S.Ct. at 2537.)
 
 
 [3]
 Nothing in the lengthy history of Clutchette I, supra, has disturbed our upholding the district court's determination that minimal due process guarantees are required before prison earnings can be forfeited. (Clutchette v. Procunier (9th Cir. 1975) 510 F.2d 613 ("Clutchette II "), Reversed on other grounds, Enomoto v. Clutchette, sub nom. Baxter v. Palmigiano (1976) 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810, and our order on remand, partially vacating our prior opinions, Clutchette v. Enomoto (9th Cir. 1976) 536 F.2d 305.)
 
 
 [4]
 Since the date of Clutchette I, supra, and Wolff v. McDonnell, supra, regulations have been promulgated implementing both the transfer and other kinds of disciplinary proceedings in an effort to comply with federal constitutional requirements. Thus, we have no reason to believe that the arbitrary action to which Johnson was subjected will recur. Of course, we express no views on the meaning or the validity of those regulations