**Walter Keen NORRIS, et al., Plaintiffs,**

**v.**

**George A. DAVIS, et al., Defendants.**

**No. C89–0118–BG.**

United States District Court,
W.D. Kentucky,
Bowling Green Division.

July 14, 1993.

---

Patricia Ann Thomas, White & Meredith, Bowling Green, KY, for plaintiffs.

Scott C. Cox, U.S. Attorney's Office, Louisville, KY, for defendants.

George A. Davis, pro se.

## MEMORANDUM OPINION

HEYBURN, District Judge.

This case is before the Court on further consideration of Defendants Brewer and Carlson's motion for summary judgment. Plaintiffs in this *Bivens* action are seven (7) ordinary citizens who were defrauded by one of the Defendants, George Davis. Unfortunately, Davis has disappeared, leaving Plaintiffs to attempt to procure relief from two FBI agents, Brewer and Carlson, who made use of Davis as an "undercover" informant. Plaintiffs ultimately assert their right to be free from official conduct of Brewer and Carlson which deprives them of federally protected rights. Since *Bivens* actions are parallel to and have the same standards as actions under 42 U.S.C. § 1983, the Court will use these terms interchangeably. *See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

This case raises issues which concern all citizens. If federal agents organize, supervise, and protect an undercover informant's business that defrauds innocent citizens, then our laws should provide some redress. If that is what occurred in this case, then Plaintiffs are entitled to their day in court. On the other hand, the mere fact that a person is a government informant or performs undercover services does not make his every unsavory act subject to the strictures of 42 U.S.C. § 1983.

By Memorandum dated February 4, 1993, the Court held this motion in abeyance to enable Plaintiffs to file a supplemental memorandum that identified the source of any "clearly established" right which Defendants' alleged conduct is asserted to have violated. Plaintiffs have filed such a memorandum.[1] For the reasons set forth herein, this Court will dismiss all claims in this case, except those of Plaintiffs Ernst and Light against Defendant Brewer.

## I.

Defendant Davis began his work as an FBI informant in New Orleans in October of 1984. In 1987, Davis moved to Tennessee and, on his own initiative, set up a new business in Kentucky. He also contacted Brewer and resumed his work for the FBI. (Def.'s Mem.Supp.Mot.Summ.J. at 1.) Davis was an important FBI informant, who devoted considerable effort to gaining information about a man named Sexton. In return for these efforts, Davis was ultimately paid a substantial sum.[2] Davis reported his findings to Brewer, who relayed this information to Carlson. After Sexton was arrested in September of 1988, Davis began to receive death threats, and at Brewer's advice, on or about September 29, 1988, he moved to an "undisclosed location." (Def.'s Mem.Supp. Mot.Summ.J. at 1–2.)

Between mid–1987 and the fall of 1988, Davis persuaded five of the seven Plaintiffs to invest in the production and sale of various electronics equipment. These businesses were part of a fraud which Davis perpetrated during the Sexton investigation. Davis owes most Plaintiffs for their investments in these counterfeit business ventures. He also charged supplies for his business and bought equipment for which he never paid.

Defendants state that neither Davis' business nor his specific transactions with Plaintiffs were supported by the governmental operations. (Brewer Aff. ¶ 2, 4.) Instead, Defendants assert that Davis defrauded Plaintiffs through purely personal transactions connected with his pawn shop and electronics store, Ideal Electronics. Defendants further assert that they did not encourage or even know of Davis' schemes to defraud the Plaintiffs. (Brewer Aff. ¶¶ 1, 2.) Davis set up his business, the vehicle for his fraudulent activity, before he contacted Brewer to offer his services as an informant. (Def.'s Mem. Supp.Mot.Summ.J. at 2.) During his work for the FBI, Davis was not engaged in surveillance on Plaintiffs; his work for the FBI did not include informing on them. (Brewer Aff. ¶ 3.) As part of his claim, Plaintiff Norris asserts that he bought a one-half ownership in a houseboat which Davis told him the FBI would rent from him for $300 per month. (Norris Aff. ¶ 5.) Davis may well have said this. Norris, however, neither received money from the FBI nor gained possession of the boat. The only remote link of Davis' fraudulent business ventures to his FBI informant work is Plaintiffs' theory that the businesses were necessary "for the establishment of credibility and to present the appearance of an on-going business venture in the community." (Am.Compl. at 5.)

Although Brewer claims that he did not know of Davis' fraudulent schemes, he was aware that Davis owed two Plaintiffs money for matters relating to Davis' personal business. These Plaintiffs, Ernst and Light, contend that Brewer threatened them and dissuaded them from suing Davis. (Am.Compl. at 18.) Brewer asserts that he merely told them that he could not reveal Davis' whereabouts, because Davis was in danger as a result of his work as an informant. (Def.'s Mem.Supp.Mot.Summ.J. at 3.)

Ernst had a promissory note for an investment he made in one of Davis' unauthentic business ventures. Since the note was not yet in default, Brewer told Ernst that he could not sue until it was due. (Def.'s Mem.

---

**1.** This is the third opportunity this Court has given Plaintiffs to articulate their claims. Previously, the Magistrate recommended that the entire case be dismissed. Plaintiff filed objections and this Court addresses these issues in response to Plaintiffs' objections.

**2.** Counsel for Brewer and Carlson indicated informally that the payment may have been in the range of $20,000–$30,000. This amount is not in the record and it is relevant only to show that Davis' work was substantial and amounted to something more than intermittent efforts to provide information.

Supp.Mot.Summ.J. at 2.) Ernst asserts that after he told Brewer that he would go to the media with information about Davis, Brewer threatened that "he would not tolerate any interference" with Davis before the note was due. (Ernst Aff. ¶¶ 22, 24.)

Light was employed by Davis and was suspected of robbing Davis' place of business. (Def.'s Mem.Supp.Mot.Summ.J. at 3.) Light had loaned Davis money and was also owed back wages. Light asserts that when he attempted to contact Davis through the FBI office, Brewer "displayed aggressive actions [and] clenched fists." (Light Aff. ¶ 15.) Light contends that to dissuade him from filing suit against Davis, Brewer threatened both him and his family. (Light Aff. ¶¶ 12–16.)

The other five (5) Plaintiffs loaned money to Davis or invested in his businesses.[3] Unquestionably, Davis has defrauded each of these Plaintiffs. However, they allege no contact with either Brewer or Carlson.

## II.

■ Government officials performing discretionary functions are immune from liability for civil damages as long as their actions do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Plaintiffs, however, must allege more than a generalized right; to be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates this right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The asserted right must be identified by reference to "federal constitutional, statutory or case law existing at the time." *Poe v. Haydon,* 853 F.2d 418, 424 (6th Cir. 1988).

This Court has repeatedly provided opportunities for Plaintiffs to identify "clearly es-

tablished" rights and their specific sources. Indeed, in an effort to be more than fair, the Court has favorably construed Plaintiffs' ambiguous supplemental memorandum. By reconstructing Plaintiffs' arguments in the best possible manner, the Court identifies four suggestions of "clearly established" rights: (1) the right to due process of law; (2) the right not to be defrauded by government officers; (3) the right to proper supervision of federal informants by FBI field officers; and (4) the right of access to the courts. The Court will address each of these proffered rights in turn.

### A. Due Process of Law

■ Plaintiffs first assert a general Fifth Amendment right against deprivation of property without due process of law.[4] Plaintiffs identify 42 U.S.C. § 1983 as the first source of this right. This statute, however, "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor,* 490 U.S. 386, 393–4, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989).

Plaintiffs also cite *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), as the source for their due process right. In *Parratt,* however, the Court emphasized that to be liable under 42 U.S.C. § 1983, officials must have acted under color of state law, *id.* at 536, 101 S.Ct. at 1913, or in a case involving federal officials, under color of authority. Plaintiffs have produced no evidence which demonstrates that Brewer and Carlson acted in their official capacity to defraud them or that Defendants even participated in Davis' schemes. This issue of color of authority will be discussed more fully in subsection B, *infra.*

■ Although the Fifth Amendment, which Plaintiffs also name as a source, is a valid source for this general right to due process of law, Plaintiffs must define their right with the requisite specificity or else

---

**3.** Plaintiff Norris alleges that Davis owes him over $79,175; Plaintiff Jumonville Oil Company claims $17,325 from Davis; Plaintiffs Williams and Morean claim that Davis owes them $3,000 and $13,500, respectively; and Plaintiff Riverfront–Do–It Center, Inc. claims $5,781.71.

**4.** In subsection D, *infra,* the Court will address the more specific Fifth Amendment claim of denial of access to courts.

qualified immunity will become obsolete. *See Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). Plaintiffs need not find precedent which holds Defendants' precise actions to be unlawful, but Plaintiffs must identify pre-existing law under which the illegality of Defendants' alleged conduct was apparent. *Id.* at 640, 107 S.Ct. at 3039. Since Plaintiffs have failed to identify such law, this Court finds that Plaintiffs' asserted right to due process of law is not sufficiently specific to support a claim under 42 U.S.C. § 1983.

### B. Right Not To Be Defrauded by Government Officers

*Respondeat superior* is not a basis for liability under 42 U.S.C. § 1983. *Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989). To recover for a violation of the right not to be defrauded by government officers, therefore, Plaintiffs must prove that Brewer and Carlson, acting in their official capacity, actively participated in Davis' schemes. *See Baker v. McCollan,* 443 U.S. 137, 142, 99 S.Ct. 2689, 2693, 61 L.Ed.2d 433 (1979). Plaintiffs speculate that Brewer, Carlson, and Davis all conspired to defraud them. None of the alleged facts, however, suggests that Brewer and Carlson were directly involved. Plaintiffs have educed no proof that either Brewer or Carlson participated in Davis' activities. In support of this "clearly established" right, Plaintiffs rely on two district court opinions, but these cases neither support Plaintiffs' assertions nor are binding on this Court.[5]

Plaintiffs contend that with discovery, they will establish the precise relationship which existed between Davis and Defendants Brewer and Carlson. (Pl.'s Resp.Opp'n Mot. Summ.J. at 3.) This court has discretion to deny a motion for summary judgment if the non-moving party has not had ample time for discovery. The court may, however, grant the motion if it finds that discovery would be fruitless. *See First Nat. Bank of Ariz. v. Cities Service Co.,* 391 U.S. 253, 298, 88 S.Ct. 1575, 1597, 20 L.Ed.2d 569 (1968). Plaintiffs have not shown that additional discovery will reveal a genuine issue of material fact. *Qualicare–Walsh, Inc. v. Ward,* 947 F.2d 823, 827 (6th Cir.1991).

Davis may have influenced some Plaintiffs with his boasts that he was a high-placed federal agent, but this did not involve any action by Brewer and Carlson and certainly none in their official capacity. Plaintiffs appear to assert that Davis' business was necessary to establish his "cover" and, therefore, is related to his work as an informant. Even if this is true and even if the FBI encouraged Davis to camouflage himself as a legitimate businessman, however, Brewer and Carlson cannot be liable under 42 U.S.C. § 1983 under the theory of *respondeat superior.*[6] *Canton,* 489 U.S. at 385, 109 S.Ct. at 1203.

### C. Right to Supervision of Informants

In their supplemental memorandum, Plaintiffs attempt to clarify the source of this "clearly established" right to have FBI agents supervise their informants. Plaintiffs, however, cite neither relevant case law nor a statutory or constitutional provision to support this right. To find that a "clearly established" right exists, "the district court must find binding precedent by the Supreme Court, this court [the Sixth Circuit], the highest court in the state in which the action arose, or itself, so holding." *Wegener v. City of Covington,* 933 F.2d 390, 392 (6th Cir. 1991). If case law from these sources is unavailable, Plaintiffs may look for guidance to cases from other circuits. *Poe v. Haydon,* 853 F.2d 418, 424 (6th Cir.1988).

Plaintiffs contend that the Guidelines on FBI Operations impose a duty on FBI field operatives to supervise and to protect third parties from their informants. (Pl.'s Supplemental Br. at 2–3.) Plaintiffs, however, do not cite these Guidelines. It is unclear to the Court whether the Guidelines merely

---

**5.** In both *Brown v. Wilson,* 373 F.Supp. 1045 (W.D.Penn.1974), and *O'Brien v. Galloway,* 362 F.Supp. 901 (D.Del.1973), the courts emphasized that for liability to attach under 42 U.S.C. § 1983, the official must have acted under color of authority, or in his official capacity. Plaintiffs have offered no evidence that Brewer and Carl-son acted in their official capacity to defraud them.

**6.** *See* subsection C, *infra,* for further analysis of related issues.

require FBI agents to supervise the FBI-related activity of an informant, or whether the agents must oversee every aspect of an informant's life. In any event, the Court finds that the FBI Guidelines are not a valid source for Plaintiffs' asserted right.

The permissible sources of "clearly established" rights are the Constitution, federal statutes, and federal caselaw. *Poe*, 853 F.2d at 424. Congress extended § 1983's coverage to statutory rights to "ensure that federal legislation providing specifically for equality of rights would be brought within the ambit" of the statute. *Maine v. Thiboutot,* 448 U.S. 1, 7, 100 S.Ct. 2502, 2506, 65 L.Ed.2d 555 (1980) (quoting *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 637, 99 S.Ct. 1905, 1926, 60 L.Ed.2d 508 (1979) (Powell, J., concurring)). The FBI Guidelines cannot create a "clearly established" right, because § 1983 only protects rights, privileges, and immunities secured by federal law and the Constitution. *Thiboutot,* 448 U.S. at 5, 100 S.Ct. at 2504. The FBI Guidelines do not create rights for citizens but rather establish standards for federal employees. Moreover, extending § 1983 to "clearly established" rights based on regulations would discourage federal agencies from adopting them, because the regulations would increase potential liability.

Plaintiffs also cite *Johnson v. Duffy,* 588 F.2d 740 (9th Cir.1978), as a source for the right to adequate supervision of FBI informants. The *Johnson* court concluded that a negative act, or a failure to perform an explicit statutory duty, can be a basis for liability under 42 U.S.C. § 1983. *Id.* at 743. *Johnson,* however, is neither binding on nor persuasive to this Court, because the Sixth Circuit has expressly addressed this issue.[7] Even if the Sixth Circuit had not, Plaintiffs have not defined with the requisite specificity the statutory duty which the Defendants have allegedly failed to perform.

■ The Sixth Circuit has set forth a "clearly established" standard. Stated affirmatively, supervisory officials will be held liable if they "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Poe v. Haydon,* 853 F.2d 418, 429 (6th Cir.1988); *Hays v. Jefferson County,* 668 F.2d 869, 874 (6th Cir.1982). Qualified immunity applies, however, if in light of clearly established law, a reasonable officer would not have considered his conduct unlawful. *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Summary judgment is appropriate if there is no genuine dispute about any fact material to whether Defendants violated a clearly established right. *Crutcher v. Kentucky,* 883 F.2d 502, 503 (6th Cir.1989).

■ Plaintiffs have produced no evidence that Defendants encouraged, participated in, or even knew of Davis' alleged schemes to defraud or his intention not to repay debts. Federal agents cannot be bound to supervise informants' private actions which are outside their control. Otherwise, the mere act of accepting information from an informant such as Davis would both open a "Pandora's box" of unknown and unlimited liability and burden agents with unrealistic "babysitting" responsibilities. Thus, to avoid these consequences, no case law or statute requires federal agents to supervise or oversee an informant's private conduct.

Further discovery could be appropriate if the Record suggested either that the FBI "set up" Davis with a "cover," that Davis' businesses were part of a specific scheme (even though not established by the FBI) to entrap "criminals," or that Davis' entire existence—including his business—was part of an FBI plan to "place" Davis where he could gain information. None of these scenarios matches the facts of this case.

The Court acknowledges that Davis would have little value as an FBI informant if he did not have a "cover," that is a plausible and legitimate life, or a personal existence beyond that of being an informant. Plaintiffs assert that Davis established his fraudulent

---

7. Although the Ninth Circuit advances a fair and realistic proposition of law under the facts presented in that case, it is not at all clear that the general proposition can be extended to the circumstances of the instant case. In *Johnson,* a prison official failed to comply with several specific state statutory duties. This failure directly caused the plaintiff's injury. In this case, Plaintiffs allege only a generalized duty to supervise; they allege no specific statutory violation, and they show no direct causation between a specific violation and their injuries.

218

businesses for the express purpose of establishing such a "cover." Even if this is true, it does not change the analysis which this Court must perform under *Poe v. Haydon.* No rule of law makes FBI agents responsible for individual acts of a private citizen, even if those acts arguably are part of an effort to create an informant's "cover." [8]

Plaintiffs have failed both to prove that this right is "clearly established," and to identify a valid source for it. Brewer and Carlson are entitled to qualified immunity for this element of Plaintiffs' claim, because reasonable officials would not deem unlawful the failure to supervise an informant's personal affairs, particularly under the facts of this case.

### D. Right of Access to the Courts

Although Defendants Brewer and Carlson had no duty to supervise every aspect of Davis' life, Brewer did know of Davis' debts and allegedly intimidated two Plaintiffs and discouraged them from suing to collect money that Davis owed them. Upon these facts rests Plaintiffs' most persuasive case. Plaintiffs Ernst and Light accurately cite the Due Process Clause of the Fifth Amendment as the source of their "clearly established" right of access to the courts. *See Wolff v. McDonnell,* 418 U.S. 539, 579, 94 S.Ct. 2963, 2986, 41 L.Ed.2d 935 (1974). The deprivation of or interference with this right is a basis for liability under 42 U.S.C. § 1983. *Graham v. Nat'l Collegiate Athletic Ass'n,* 804 F.2d 953, 959 (6th Cir.1986).

Plaintiffs have presented a genuine dispute about facts material to whether Defendant Brewer violated a clearly established right. *Crutcher v. Kentucky,* 883 F.2d 502, 503 (6th Cir.1989). Plaintiffs Ernst and Light assert that Brewer intimidated them and denied them access to the courts by threatening both them and their families. In refusing to reveal Davis' whereabouts, Brewer argues that he was merely trying to protect Davis, whose life was in danger because of his informant work for the FBI. Brewer contends that he had no duty either to disclose Davis' location or to force Davis to pay his debts to Plaintiffs.

Since reasonable persons could differ on how to interpret these facts, the Court overrules Defendant Brewer's motion for summary judgment. This ruling eliminates all Plaintiffs except Ernst and Light. The Court will enter an Order consistent with this Memorandum Opinion.

### *ORDER*

The Court having thoroughly reviewed this matter, having issued a Memorandum Opinion, and being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** that Defendant Carlson's motion for summary judgment is **SUSTAINED** and the claims against him are **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that Defendant Brewer's motion for summary judgment is **OVERRULED**.

**IT IS THEREFORE ORDERED** that the claims of all Plaintiffs except those of Roger Ernst and Philip Light are **DISMISSED** with prejudice.

---

8. It seems entirely outside the realm of possibility that FBI agents would encourage fraud upon innocent citizens that could only be counterproductive to its efforts to entrap Sexton. If Davis gained notoriety from fraudulent activities, this would undermine his usefulness as an informant.