ALEXANDER J. RZEZNIK vs. CHIEF OF POLICE
OF SOUTHAMPTON.

Hampshire. November 10, 1977. — February 24, 1978.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Sealing of Criminal Records. Firearms. Libel and Slander. Due Process of Law,* Gun license. *Jurisdiction,* Civil rights. *Words,* "Criminal justice agency."

Felony records which have been sealed under the provisions of G. L. c. 276, § 100A, may be considered by the police when issuing or revoking a gun license under G. L. c. 140, §§ 122, 122B, and 131. [479-481]

General Laws c. 276, § 100A, the sealed records statute, does not operate to erase the fact of a prior conviction. [482]

In an action for defamation, the plaintiff waived any objections to the admission of evidence of prior convictions which had been sealed pursuant to G. L. c. 276, § 100A, by stipulating to the fact of his prior convictions in a statement of agreed facts. [482-483]

The absolute disqualification of convicted felons from eligibility for gun licenses is not unconstitutional. [483-484]

A complaint alleging that the plaintiff's gun licenses were revoked in retaliation for his testimony before a grand jury stated a cause of action under 42 U.S.C. § 1983 (1970) for violation of his First Amendment rights even though the plaintiff was disqualified from holding a gun license. [484-486]

CIVIL ACTION commenced in the Superior Court on October 17, 1975.

The case was heard by *Moriarty,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Richard M. Howland* for the plaintiff.

*Philip A. Beattie (Lewis A. Whitney* with him) for the defendant.

HENNESSEY, C.J. The plaintiff, Alexander J. Rzeznik, a resident of Southampton, was convicted of two separate

felonies in 1949 and in 1953. In 1974, the record of these convictions was sealed by the Commissioner of Probation pursuant to G. L. c. 276, § 100A. Subsequently, pursuant to G. L. c. 140, §§ 122, 122B, and 131, the plaintiff applied to the defendant chief of police of Southampton for licenses to carry and sell firearms and to sell ammunition. The defendant issued these licenses on December 10, 1974, but revoked them on October 14, 1975. Under G. L. c. 140, §§ 122, 122B, and 131, such licenses may not be issued to persons convicted of a felony.

The plaintiff brought an action in the Superior Court, Hampshire County, seeking a declaration that he was entitled to hold the various gun licenses, and that the defendant's actions violated the plaintiff's constitutional rights, including his right to freedom of speech. The plaintiff additionally sought damages for slander, damages for violation of his constitutional rights, and an injunction restraining the defendant from arresting or prosecuting him under G. L. c. 269, § 10, which provides criminal penalties for the unauthorized carrying of a weapon.

After a jury waived trial, the judge found for the defendant and made various rulings of law. The plaintiff then appealed, challenging: (1) the judge's conclusion that a sealed felony record may be considered by the police when issuing or revoking a gun license under G. L. c. 140, §§ 122, 122B, and 131; (2) the propriety of admitting the sealed felony record in evidence, when offered to establish the defense of truth to the plaintiff's allegations of slander; (3) the constitutionality of G. L. c. 140, §§ 122, 122B, and 131, with respect to its absolute disqualification of convicted felons from eligibility for gun licenses; and (4) the judge's conclusion with respect to the plaintiff's freedom of speech claim.

We conclude that the judge was correct in ruling that the plaintiff was not entitled to the licenses he seeks, nor was he entitled to damages for slander. We decide, however, that the judge erred in his rulings of law in dismissing that part of the plaintiff's complaint seeking damages under 42

U.S.C. § 1983 (1970) for alleged infringement of his constitutional right to freedom of speech. Therefore, we reverse.

The judge found the following facts. In June, 1973, the plaintiff petitioned the Governor of the Commonwealth for a pardon from the crimes of which he had been convicted. His stated reason for seeking a pardon was that he wanted "to purchase firearms for . . . [his] self protection and hunting." In reply to his petition, a clerk of the advisory board of pardons explained to the plaintiff that possibly he was entitled to have his record sealed pursuant to G. L. c. 276, § 100A. The clerk advised that this procedure was speedier than a pardon, and that, by virtue of having his record sealed, the plaintiff would be entitled to answer "No Record" to any questions regarding the prior convictions. The plaintiff completed an application requesting that his record be sealed, and, on November 27, 1974, was notified that his request had been granted.

Sometime thereafter, the plaintiff applied to the defendant for a license to carry firearms, a license to sell, rent, or lease various firearms, and a license to sell ammunition. Each application form contained a question asking whether the applicant had ever been convicted of a felony. To each of these questions, the plaintiff responded "No Record."

The defendant knew that the plaintiff had in fact been convicted of a felony, but he had also been advised that the record had been sealed. Accordingly, the defendant consulted the district attorney and the Commissioner of Probation to ascertain what effect the sealing of a record might have on pending firearms applications. On December 10, 1974, being unable to receive a firm answer, the defendant issued the plaintiff a license to carry firearms. On May 1, 1975, the defendant issued to the plaintiff licenses to sell, rent, or lease firearms and to sell ammunition. The defendant did not authorize the plaintiff to carry firearms merely for self-protection; the license to carry was limited to business purposes. Additionally, the defendant did not notify the Commissioner of Public Safety of the plaintiff's applica-

tion, even though such notification is an express requirement of G. L. c. 140, §§ 122, 122B, and 131.

During the summer of 1975, difficulties developed between the plaintiff and the defendant. The defendant refused the plaintiff's request to amend his firearm carrying license to permit him to carry a firearm for self-protection; the plaintiff threatened to write to the Attorney General with regard to certain conflicts of interest with which the defendant was allegedly involved.

Also that summer, the defendant became aware of a memorandum issued by the Criminal History Systems Board regarding the effect of the sealed records statute. This memorandum advised that, since the sealed records statute was primarily directed toward employment situations, it would have no effect on such matters as applications for gun licenses. It concluded that "the criminal justice agency would be entitled to the information in the sealed record pursuant to such an application, since applying for a gun license is not applying for employment." The defendant took no steps to revoke the plaintiff's licenses in response to this memorandum.

On October 9, 1975, the plaintiff testified before a grand jury with regard to the defendant's alleged involvement in conflicts of interest. That evening, the defendant went to the plaintiff's home and demanded the gun licenses. Over protest, the plaintiff returned the license to carry, but refused to hand over the license to sell firearms or ammunition. The following day, the defendant notified the plaintiff that he intended to revoke the licenses remaining in the plaintiff's possession, and that a hearing would be held on October 14, 1975.

The hearing was held on the scheduled date. Those present were the defendant, the three selectmen of the town acting in their capacities as police commissioners, the plaintiff, and four individuals who attended at the request of the plaintiff or his attorney. The hearing was held in executive session. The defendant stated that he was revoking the licenses because he felt that he had made a mistake in issuing

them. He stated that he had been in contact with the office of the Attorney General and was convinced that the plaintiff was ineligible to hold any of the licenses, despite the fact that his criminal records had been sealed. The plaintiff stated his disagreement with the defendant, but turned the licenses over to him.

1. The plaintiff does not dispute the fact that the gun licensing statutes, G. L. c. 140, §§ 122, 122B, and 131, clearly state that persons convicted of a felony may not obtain licenses to carry or to sell firearms or ammunition.[1] Rather, the plaintiff questions the availability of his sealed criminal record for use in determining whether he was eligible for the licenses.

The plaintiff contends that because the sealed records statute, G. L. c. 276, § 100A, is rehabilitative in nature, it should be read to prohibit the use of sealed criminal offender information for any purposes other than those specifically enumerated in the statute. The plaintiff argues that, since G. L. c. 276, § 100A, does not specifically allow gun licensing authorities access to sealed criminal records, the use of this information by the chief of police in revoking the plaintiff's gun licenses was impermissible.

We agree with the plaintiff that the sealed records statute serves a useful rehabilitative purpose in providing a mechanism whereby the fact of a prior conviction is, in most instances, shielded from public view.[2] On the basis of the statutory language and the legislative history of G. L. c. 276,

---

[1] General Laws c. 140, § 122B, as amended through St. 1973, c. 892, § 2, provides in part: "The chief of police . . . may grant a license to any person, except . . . [inter alia] a person who has been convicted of a felony in any state or federal jurisdiction . . . ." Similar directives are contained in G. L. c. 140, §§ 122 and 131.

[2] General Laws c. 276, § 100A, as appearing in St. 1975, c. 278, provides that when a criminal record has been sealed, the fact of the prior conviction "shall not operate to disqualify a person in any examination, appointment or application for public service in the service of the commonwealth or of any political subdivision thereof; nor shall such sealed records be admissible in evidence or used in any way in any court proceedings or hearings . . . except in imposing sentence . . . ."

§ 100A, however, we are unable to agree that the sealed records statute must operate to preclude the use of criminal offender information by gun licensing authorities.

General Laws c. 276, § 100A, provides that the Commissioner of Probation, "in response to inquiries by authorized persons other than any law enforcement agency, any court, or any appointing authority, shall in the case of a sealed record . . . report that no record exists." [3] This provision must be read to imply that law enforcement agencies, courts, and appointing authorities do have access to criminal records which have been sealed.

Such a reading is consistent with legislative history, which reveals that even the broadest versions of the proposed sealed records statute did not, as the plaintiff suggests, purport completely to erase the fact of a prior criminal conviction; rather, each version contained provisions requiring the Commissioner to report the fact of a sealed felony conviction to any inquiring police or court agency. See 1971 House Doc. No. 588; 1971 House Doc. No. 5362. See also 1971 House Doc. No. 5719; 1971 House Journal 2227-2228. Thus, the legislative history of § 100A supports our conclusion that under the statute the defendant is clearly allowed access to and, by implication, use of information regarding a sealed criminal record.

Although the plaintiff urges us to hold otherwise, we further conclude that our reading of the sealed records statute is consistent with G. L. c. 6, §§ 167-178, the statutory scheme regulating the maintenance and dissemination of criminal offender information. General Laws c. 6, § 172, inserted by St. 1972, c. 805, § 1, provided [4] that "[c]riminal

---

[3] The statute also provides that an employer must inform job applicants that they may answer "no record" with regard to any questions concerning prior arrests or convictions, if their criminal records have been sealed.

[4] On October 29, 1977, G. L. c. 6, § 172, was amended. St. 1977, c. 691, § 4. For the purpose of this case, however, we must apply G. L. c. 6, § 172, in force at the time that the defendant sought access to the criminal offender information. See generally *City Council of Waltham* v. *Vinciullo*, 364 Mass. 624, 626-629 (1974).

offender record information shall be disseminated . . . only to (*a*) criminal justice agencies and (*b*) such other individuals and agencies as are authorized access to such records by statute."

The defendant falls into both of these categories. First, the defendant is part of a "criminal justice agency" as defined in the statute. G. L. c. 6, § 167. Second, as was shown above, the defendant chief of police, as a member of a law enforcement agency, is "authorized access to such records by" G. L. c. 276, § 100A.[5] The Criminal History Systems Board itself recognized this authority when it advised in its January, 1975, memorandum that "the criminal justice agency would be entitled to the information in [a] sealed record pursuant to . . . an application [for a gun license]." Thus, we conclude that, even under the broad regulatory provisions of the Criminal Offender Record Information System, the defendant would have been able to receive information regarding the plaintiff's prior criminal record and to use this information in determining the plaintiff's eligibility for a gun license.[6]

---

[5] Moreover, under the firearms licensing statutes, G. L. c. 140, §§ 122, 122B, and 131, the chief of police, before issuing any license, has an affirmative duty to determine whether an applicant has "*any* criminal record." G. L. c. 140, § 122, as appearing in St. 1959, c. 296, § 2 (emphasis added). Under G. L. c. 140, § 122B, "[t]he chief of police . . . may grant a license to any person, except . . . [inter alia] a person who has been convicted of a felony in any state or federal jurisdiction . . . ." Similar directives are contained in G. L. c. 140, §§ 122 and 131. Before granting either a license to sell, rent, or lease firearms under § 122, or a license to carry firearms under § 131, the chief of police is required to conduct "an investigation," presumably to determine whether any of the disqualifying factors listed in the above provisions apply to a particular applicant. Additionally, "[t]he licensing authority to whom such application is made shall cause one copy of said applicant's fingerprints to be forwarded to the commissioner of public safety, who shall . . . advise such authority in writing of *any* criminal record of the applicant" (emphasis added). G. L. c. 140, § 122. General Laws c. 140, § 131, contains a similar directive.

[6] Although the plaintiff argues that the regulations promulgated under G. L. c. 6, § 168, precluded the defendant from using the sealed records as he did, our reading of the regulations leads us to conclude that they do not support the plaintiff's argument.

2. In characterizing as slanderous the defendant's publication of the fact of the prior felony convictions, the plaintiff concedes that truth is an absolute defense. *Bander v. Metropolitan Life Ins. Co.*, 313 Mass. 337, 342 (1943). *Comerford v. Meier*, 302 Mass. 398, 402 (1939). *Foss v. Hildreth*, 10 Allen 76, 79 (1865). He argues, however, that where the record of a conviction has been sealed under G. L. c. 276, § 100A, the fact of the conviction essentially is erased, so that the conviction is no longer a fact for any purposes other than those enumerated in the statute. Additionally, the plaintiff argues that, even if the statements were true, the defendant could not prove truth as an affirmative defense, because G. L. c. 276, § 100A, provides: "[N]or shall such sealed records be admissible in evidence or used in any way in any court proceedings . . . except in imposing sentence . . . ."

We do not agree with the plaintiff's reasoning. First, the sealed records statute does not operate to erase the fact of a prior conviction (compare G. L. c. 6, §§ 167, 171, providing for the "purging" or expungement of criminal offender information so that "there is no trace of information removed and no indication that said information was removed." G. L. c. 6, § 167); it seeks simply to ensure confidentiality. The information is in fact maintained (see G. L. c. 6, §§ 167-178) and is accessible to law enforcement agencies, courts, and appointing authorities under G. L. c. 276, § 100A. There is nothing in the statute or the legislative history to suggest that, once the fact of a conviction is sealed, it becomes nonexistent, and hence untrue for the purposes of the common law of defamation.

Second, the plaintiff himself stipulated to the fact of his two prior felony convictions in a statement of agreed facts which was filed with the trial court on January 21, 1977. He confirmed his agreement to these facts during the trial. Therefore, we do not reach the question whether the above quoted passage from G. L. c. 276, § 100A, applies to exclude evidence of sealed convictions, nor do we address any constitutional problems inherent in a claim that the sealed

records statute purports to deprive an individual of an otherwise valid defense to a charge of defamation. The plaintiff waived any objections to admitting evidence of prior convictions by agreeing to those facts. Cf. *Wheelock* v. *Henshaw*, 19 Pick. 341 (1837).

3. The plaintiff contends that, by excluding felons from eligibility for gun licenses, G. L. c. 140, §§ 122, 122B, and 131, create irrebuttable presumptions that the individual applicant cannot be rehabilitated, and thereby deny the individual applicant procedural due process. We do not agree.

In its most recent discussion of the doctrine disfavoring irrebuttable presumptions, the Supreme Court, in *Weinberger* v. *Salfi*, 422 U.S. 749 (1975), made clear that, at least in the area of economic and social welfare, it would not apply the doctrine disfavoring irrebuttable presumptions as "a virtual engine of destruction for countless legislative judgments . . . ." *Id.* at 772. See *Usery* v. *Turner Elkhorn Mining Co.*, 428 U.S. 1, 23 (1976). Thus, in upholding the validity of statutory requirements governing the eligibility for certain Social Security benefits,[7] the Court declined to examine the statutory *classification* at issue to determine whether it was "necessarily or universally true in fact," *Vlandis* v. *Kline*, 412 U.S. 441, 452 (1973). Rather, the Court examined the statutory *procedures* to determine whether applicants for governmental benefits were able to present evidence that they met the challenged eligibility requirements. *Weinberger* v. *Salfi*, *supra* at 772. "[F]ailing in this effort," the Court noted, "[the applicants'] only constitutional claim is that the test they cannot meet is not so rationally related to a legitimate legislative objective that it can be used to deprive them of benefits available to those who do satisfy that test." *Id.*

We think that this reasoning controls here. As in *Weinberger*, applicants for firearms and ammunition licenses are

---

[7] 42 U.S.C. §§ 416(c) (5) (1970) and 416(e) (2) (1970), as amended, 42 U.S.C. § 416(e) (2) (Supp. III, 1973).

free to present evidence that they meet the specified requirements. Also as in *Weinberger,* the challenged classification in this case represents an "objective criterion, one which the Legislature considered to bear a sufficiently close nexus with underlying policy objectives . . . ." *Id.* The plaintiff properly does not challenge the rationality of the legislative judgment which disqualified previously convicted felons from eligibility for firearms and ammunition licenses. See *United States* v. *Harris,* 537 F.2d 563, 565 (1st Cir. 1976), and cases cited. Thus none of the concerns articulated by the Court in *Weinberger* v. *Salfi* is present here.

4. The plaintiff's First Amendment claim is based on the theory that the defendant revoked the plaintiff's gun licenses as a retaliatory measure after the plaintiff testified against him before the grand jury. On this issue, the judge found that by effecting the revocations on the very day that the plaintiff testified against him, the defendant created "the irresistible impression that his action was prompted as much by vindictiveness and personal animosity toward the plaintiff as by a desire to perform the duties of his office. Such vindictiveness and personal animosity alone, however, do not give rise to a cause of action."

We disagree. Although we are aware that the plaintiff, by statute, is not entitled to the licenses he seeks, we conclude on the basis of *Perry* v. *Sindermann,* 408 U.S. 593 (1972), that their revocation, if made in retaliation for the plaintiff's exercise of his First Amendment rights, is actionable under 42 U.S.C. § 1983 (1970).[8]

---

[8] Under 42 U.S.C. § 1983 (1970), any person "who, under color of any statute . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Because neither § 1983 nor its jurisdictional counterpart, 28 U.S.C. § 1343 (1970), vests exclusive jurisdiction over civil rights cases in the Federal courts, a grant of concurrent jurisdiction in the State courts is presumed. *Long* v. *District of Columbia,* 469 F. 2d 927, 937 & n.4 (D.C. Cir. 1972). *Davis* v. *Towe,* 379 F. Supp. 536, 538 (E.D. Va. 1974). *Luker* v. *Nelson,* 341 F. Supp. 111, 116 (N.D. Ill. 1972). *New Times, Inc.* v. *Arizona Bd. of Regents,* 110 Ariz. 367 (1974). Cf. *Moye* v.

In *Perry,* a nontenured teacher challenged the Texas Board of Regents' nonrenewal of his contract, alleging that this action was taken in response to his testifying before the Texas Legislature and publicly disagreeing with the board's policies. Although the Court found that the respondent had no protected property or liberty interest in continued employment at the college, 408 U.S. at 599, it concluded that the existence of a property or liberty interest was irrelevant to his First Amendment claims. "For at least a quarter-century, this Court has made clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests — especially, his interest in freedom of speech." *Id.* at 597.

After *Perry,* it has been widely recognized that if an individual proves that a governmental benefit has been denied for constitutionally impermissible reasons, that individual is entitled to appropriate remedies under 42 U.S.C. § 1983 (1970). See *Mabey* v. *Reagan,* 537 F.2d 1036, 1045 (9th Cir. 1976); *Jannetta* v. *Cole,* 493 F.2d 1334, 1337 n.5, 1338 (4th Cir. 1974); *Smith* v. *Losee,* 485 F. 2d 334, 338, 340 (10th Cir. 1973). See also *Williams* v. *Day,* 412 F. Supp. 336, 340 n.1 (E.D. Ark. 1976); *Manfredonia* v. *Barry,* 401 F. Supp. 762, 767-768 (E.D.N.Y. 1975); *Needleman* v. *Bohlen,* 386 F. Supp. 741 (D. Mass. 1974); *Brown* v. *Wilson,* 373 F. Supp. 1045, 1049 (W.D. Pa. 1974); *O'Brien* v. *Galloway,* 362 F. Supp. 901, 905 (D. Del. 1973). Cf. *Monroe* v. *Pape,* 365 U.S. 167, 172 (1961).

---

*Raleigh,* 503 F.2d 631, 634-635 (4th Cir. 1974); *Horn* v. *O'Cheskey,* 378 F. Supp. 1280, 1284-1285 (D.N.M. 1974). Due to the fact that the plaintiff alleged all the necessary elements of a § 1983 claim in his complaint, his failure specifically to include the statute in the pleadings is not fatal to his case. A specific reference to § 1983, however, would have been the preferable course.

We think that this analysis is applicable here. Where the plaintiff has alleged that he was denied a governmental benefit such as a gun license in retaliation for testimony before a grand jury, he has made out a cause of action under § 1983, based on the First Amendment.

We note that in an action alleging retaliation against exercise of First Amendment freedoms, the trier's task, that of determining the real reason for the defendant's action, is a difficult one. Nevertheless, courts have recognized that "the only way to erect adequate barriers around First Amendment freedoms is for the trier of the fact to delve into the motives of the decision-maker." *Mabey* v. *Reagan,* 537 F.2d 1036, 1045 (9th Cir. 1976).

In reversing the judgment on this issue, we do not rule that the plaintiff's statutory disqualification from holding a gun license should be discounted entirely. On the contrary, if the plaintiff proves his case, this may be highly relevant to the question of damages. Cf. *United States ex rel. Tyrrell* v. *Speaker,* 535 F.2d 823, 829-830 (3d Cir. 1976). We hold only that the plaintiff's disqualification from holding a gun license may not be considered as a bar to his First Amendment claim.

5. In sum we conclude that the judge's findings of fact were warranted by the evidence, and his rulings of law were correct in all respects except as they related to the First Amendment claim. The judgment is thus affirmed in all aspects except as to the First Amendment claim under § 1983. The case is remanded to the Superior Court for reconsideration by the judge of the evidence as to that claim, including the issue of damages, if the judge reaches that issue, and if any have been proved by the plaintiff.

*So ordered.*