ALEXANDER J. RZEZNIK vs. CHIEF OF POLICE OF SOUTHAMPTON.

Hampshire.   December 10, 1979. — July 24, 1980.

Present: ARMSTRONG, ROSE, & KASS, JJ.

*Jurisdiction,* Civil rights.  *Damages,* Civil rights action.  *Civil Rights.*

An order remanding an action seeking damages for a violation of the
plaintiff's rights under 42 U.S.C. § 1983 (1970) to the Superior Court
and directing the judge to reconsider the evidence as to the plaintiff's
claim, "including the issue of damages, if the judge reaches that issue,
and if any have been proved by the plaintiff," did not restrict the judge
to an award of actual damages which might be proved, but permitted
an award of punitive damages in the judge's discretion. [338-339]
In an action under 42 U.S.C. § 1983 (1970) the evidence supported reason-
able inferences that the defendant police chief, at the time he revoked
the plaintiff's firearms licenses, knew of the plaintiff's testimony
against the defendant earlier in the day before a grand jury and acted
with retaliatory intent in revoking the licenses. [339]

CIVIL ACTION commenced in the Superior Court on Octo-
ber 17, 1975.

After review by the Supreme Judicial Court, the case was
remanded to the Superior Court and heard by *Moriarty,* J.

The case was submitted on briefs.
*Frederick S. Pillsbury* for the defendant.
*Richard M. Howland* for the plaintiff.

ROSE, J.   The defendant appeals from a judgment award-
ing exemplary or punitive damages in the amount of $1,000
to the plaintiff, based on the violation of the plaintiff's First
Amendment rights under 42 U.S.C. § 1983 (1970) (the Civil
Rights Act), by the defendant's revocation of the plaintiff's
licenses to carry and sell firearms and to sell ammunition.
We find no error and affirm.

The case was first tried in 1976 before a judge without a
jury.  A judgment was entered on January 24, 1977, dismiss-

ing the plaintiff's various claims for money damages. On appeal, the Supreme Judicial Court reversed the judgment in so far as it dismissed the claim for damages for an alleged violation of the plaintiff's constitutional rights under § 1983 and remanded the case for reconsideration by the judge of the evidence as to that claim, including the issue of damages.[1]

On September 8, 1978, the judge entered his findings and order for judgment. He concluded that the plaintiff had proved the elements of his § 1983 claim but had sustained no actual damages. He awarded the plaintiff punitive damages, based on the following findings. In 1974 and 1975 the defendant, the chief of police of Southampton, issued to the plaintiff licenses to carry firearms, to sell, rent and lease firearms, and to sell ammunition. The defendant knew that the plaintiff, at the time he applied for the licenses, had records of two felony convictions and also knew that the records had been sealed pursuant to G. L. c. 276, § 100A. The defendant sought an opinion from the district attorney and from the commissioner of probation as to the effect of the sealing of the records on the plaintiff's eligibility for firearms licenses but was unable to get a firm answer. He therefore issued the licenses. Later, in August of 1975, the defendant learned of a memorandum issued by the Criminal History Systems Board which advised that the sealed records statute was applicable primarily in employment situations, and would not be applicable to such matters as applications for licenses to carry or sell firearms. The defendant realized at that time that the licenses had been improperly issued.[2]

---

[1] *Rzeznik* v. *Chief of Police of Southampton*, 374 Mass. 475 (1978). The court held that, even though the plaintiff was not entitled to the licenses, he had nevertheless made out a cause of action under 42 U.S.C. § 1983 (1970), if it should be found that the revocations were made in retaliation for the plaintiff's exercise of his First Amendment rights, and that such a cause of action may be pursued in the State courts.

[2] The judge expressed his opinion that the defendant had intended to revoke the licenses some time after August, 1975, and that his dilatoriness was probably due to the fact that the plaintiff was not using the licenses because his plans to open a firearms and ammunition business had been blocked by a problem under the local zoning by-law.

The defendant, however, took no action to revoke the plaintiff's licenses until the afternoon of October 9, 1975, at which time he made three visits to the plaintiff's home. On his third visit, he found the plaintiff at home, and demanded the return of the plaintiff's licenses. The plaintiff, under protest, returned the license to carry firearms.[3] On October 9, 1975, the plaintiff had testified earlier in the day against the defendant before a grand jury with regard to an alleged conflict of interest on the part of the defendant. The judge found that the defendant was aware of that testimony when he visited the plaintiff's home. The judge stated that he had "no doubt" that when the defendant went to the plaintiff's home to demand the licenses, he did so in a spirit of retaliation for the testimony which the plaintiff had given against him earlier that day, and that his action was prompted as much by vindictiveness and personal animosity toward the plaintiff as by a desire to perform the duties of his office. The judge found that the defendant had known for many weeks that the licenses had been issued improperly and had taken no action. When he learned of the plaintiff's testimony, however, he reacted with anger and used the performance of his duty as a means of revenge.

The judge found, however, that the plaintiff had sustained no actual damage as a result of the defendant's conduct. The plaintiff had no right to the licenses to carry and sell firearms and to sell ammunition. Any financial losses incurred by the plaintiff in connection with his proposed business venture would have been incurred in any event, regardless of the manner in which the license revocations were accomplished, and such losses, therefore, were not caused by the violation of the plaintiff's civil rights. The judge also found that the plaintiff's health or physical condition was not in any way impaired by the defendant's conduct. Nevertheless, under the applicable Federal law, the judge concluded that

---

[3] The plaintiff refused to return the other licenses, and on October 14, 1975, a hearing was held at the defendant's request by the board of selectmen of the town in executive session, and pursuant to that hearing, the plaintiff's remaining licenses were revoked.

the plaintiff was entitled to recover punitive damages, because the wrong occasioned by the defendant's conduct was aggravated by actual malice and personal animosity. *Caperci* v. *Huntoon*, 397 F.2d 799 (1st Cir.), cert. denied, 393 U.S. 940 (1968).

The defendant appeals from the judgment on two grounds: first, that the judge's findings with regard to the damages issue were not within the scope of the remand ordered by the Supreme Judicial Court; and second, that the evidence did not support the judge's findings with regard to the defendant's retaliatory motive. As to the first issue, the Supreme Judicial Court stated in its decision[4] that the case "is remanded to the Superior Court for reconsideration by the judge of the evidence as to that claim [under 42 U.S.C. § 1983 (1970)], including the issue of damages, if the judge reaches that issue, *and if any have been proved by the plaintiff*" (emphasis supplied). The defendant relies upon the italicized language in his argument that the court's judgment permitted an award of only the actual damages, which might be "proved," and not punitive damages, not based upon specific proof. Because the trial judge found that the plaintiff had sustained no actual damage as a result of the defendant's conduct, the defendant argues that such finding constituted a finding that the plaintiff had "proved" no damages, and was therefore not entitled to recover punitive damages.

We do not agree with the defendant's interpretation of the court's decision. The court relied upon the principle that "if an individual proves that a governmental benefit has been denied for constitutionally impermissible reasons, that individual is entitled to appropriate remedies under 42 U.S.C. § 1983 (1970)." *Rzeznik* v. *Chief of Police of Southampton*, 374 Mass. at 485, and cases cited. From the court's reference to "appropriate remedies" and its citation of *Smith* v. *Losee*, 485 F.2d 334 (10th Cir. 1973), cert. denied, 417 U.S. 908 (1974), in which punitive as well as actual damages were awarded, we conclude that an award of

---

[4] See *Rzeznik* v. *Chief of Police of Southampton*, 374 Mass. at 486.

punitive damages, if the right to recover such damages were "proved" by the plaintiff on the record in this case, was within the discretion of the trial judge. Under applicable Federal law, punitive damages may be awarded in certain circumstances when the violation of an individual's constitutional rights is aggravated by actual malice, evil intent, deliberate oppression, wilful or wanton misconduct, or a reckless disregard for the civil rights of the plaintiff. See *Caperci* v. *Huntoon*, 397 F.2d at 801. Accord, *Guzman* v. *Western State Bank*, 540 F.2d 948, 953 (8th Cir. 1976), and cases cited. See also *Adickes* v. *S. H. Kress & Co.*, 398 U.S. 144, 233 (1970) (Brennan, J., concurring in part and dissenting in part). Based on the judge's findings that the defendant went to the plaintiff's home in a spirit of retaliation for the testimony which the plaintiff had given against him earlier that day, and that his actions were prompted by vindictiveness and personal animosity, the judge properly exercised his discretion in awarding punitive damages.

The second issue argued by the defendant is the sufficiency of the evidence to support the judge's finding that the defendant revoked the plaintiff's licenses in retaliation for the plaintiff's testimony against him. The defendant contends that the key fact essential to such a finding has not been proved: namely, whether the defendant knew of the plaintiff's testimony prior to his revocation of the licenses. The defendant argues that the only evidence adduced on this issue was his own testimony that he learned of the plaintiff's appearance before the grand jury after he had revoked the license, that is, sometime in the afternoon or evening of October 9, 1975, and that he had not been aware of the plaintiff's testimony prior to his visit to the plaintiff's home.

Based on all the evidence, we think the judge was warranted in inferring that the defendant knew of the plaintiff's testimony when he revoked the licenses. The evidence showed that the defendant had known for several months before he revoked them that the licenses had been improperly issued but took no steps to revoke them until October 9, 1975, the day on which the plaintiff had earlier testified

against him. The judge could reasonably have inferred that some matter of particular urgency prompted the defendant on that day to make three visits in the same afternoon to the plaintiff's home to demand the licenses. The evidence also showed that the defendant exhibited anger in his language and behavior when he confronted the plaintiff at home. The plaintiff's daughter testified that the defendant asked for the license and "snatched it out of [the plaintiff's] hand" and that when the plaintiff inquired as to the reason for revocation, the defendant replied that the plaintiff "was an unsuitable person . . . ." She testified that when the plaintiff refused to relinquish his other licenses without the proper warrant, the defendant "got mad . . . and told him he would be back Monday with a warrant . . . with police powers."

When questioned by plaintiff's counsel as to the basis for his revocation of the license, the defendant stated that the plaintiff "was an improper person to have a license to carry [a firearm]." Later in the trial, during cross-examination by his own counsel, the defendant testified that on October 9, 1975, he had telephoned Daniel Jaffe, the author of the memorandum issued by the Criminal History Systems Board (from which the defendant had learned in August, 1975, that the plaintiff's licenses had been improperly issued). According to the defendant's testimony, Jaffe informed him that he might be subject to a $500 fine or jail sentence for having improperly issued the permits. The defendant testified that he then told Jaffe he was going to revoke the licenses that day and asked Jaffe to send him a letter containing the information they had discussed. A letter from Jaffe to the defendant dated October 22, 1975, was admitted in evidence (for a limited purpose only). As the defendant testified, that letter did not indicate the date or form of the prior communication between the two, nor did the letter contain any reference to Jaffe's alleged statement concerning the defendant's potential liability.

The defendant contends that the judge's findings regarding the defendant's motiviation were based on surmise and

conjecture, and not on facts in the record. We disagree. The judge could choose not to believe the defendant's stated reasons for revoking the licenses, as well as his denial of prior knowledge of the plaintiff's testimony, and could reasonably infer from the facts shown by all the evidence, such as the timing and manner of the revocation and the sequence of events on October 9, 1975, that the defendant, when he acted to revoke the licenses, did so with the knowledge of the plaintiff's testimony and with retaliatory intent. As the court stated in *Rzeznik* v. *Chief of Police of Southampton*, 374 Mass. at 486, "[I]n an action alleging retaliation against exercise of First Amendment freedoms, the trier's task, that of determining the real reason for the defendant's action, is a difficult one." Nevertheless, "[a]lthough motivational analyses can be slippery, the only way to erect adequate barriers around First Amendment freedoms is for the trier of the fact to delve into the motives of the decision-maker." *Mabey* v. *Reagan*, 537 F.2d 1036, 1045 (9th Cir. 1976). We note that, absent a direct admission of improper motive, the trier of fact must of necessity draw reasonable inferences from facts which are more susceptible of direct proof. On the entire evidence in the present case, we are not "left with the definite and firm conviction that a mistake has been committed." *United States* v. *United States Gypsum Co.*, 333 U.S. 364, 395 (1948), quoted in *Building Inspector* v. *Sanderson*, 372 Mass. 157, 160 (1977). We conclude that the findings made by the judge, who had the opportunity to assess the credibility of the witnesses, are not "clearly erroneous" within the meaning of Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974).

*Judgment affirmed.*